UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 03-476-JBC

CHARLES W. ADAMS, JR., et al.,                                                    PLAINTIFFS,

V.                         MEMORANDUM OPINION AND ORDER

COOPER INDUSTRIES, INC. and
MCGRAW EDISON COMPANY,                                                      DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motions in limine (DE 517, 533). The court, having reviewed the record and being otherwise sufficiently advised, will deny both motions.

### I. Factual Background

This matter is one of several cases arising out of contamination caused by chemical emissions from the National Electric Coil ("NEC") plant in Harlan County, Kentucky. A class action was filed in the Harlan Circuit Court on October 6, 1997. *Lankford, et. al. v. Cooper Indus., et. al.*, No. 97-CI-00670 (Harlan Cir. Ct. 1997). The class was later decertified, and many of the plaintiffs in that case settled. This lawsuit was filed on September 19, 2003, and the complaint alleges various claims for wrongful death and personal injury. A related lawsuit, *Moody, et. al. v. Cooper Indus., et. al.*, No. 03-158-JBC, was filed on February 13, 2003, and was later consolidated with the present case.

### II. Legal Analysis

*A. The Defendants' Motions in Limine*

The defendants seek to exclude, pursuant to Fed. R. Evid. 403, all testimony regarding and references to: (1) advisory classifications of chemical carcinogenicity issued by the International Agency for Research on Cancer ("IARC"), the National Toxicology Program ("NTP"), the EPA's Integrated Risk Assessment System ("EPA"), and other similar organizations (collectively, "the carcinogen classifications"); and (2) the United States Department of Veterans Affairs ("VA") regulations providing compensation for diseases resulting from service-related dioxin exposure and the associated findings, recommendations, and publications of the Institute of Medicine ("IOM") regarding statistical associations between specific health outcomes and Agent Orange exposure (collectively, "the VA/IOM classifications").

According to Rule 403, evidence that is otherwise relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  For the purposes of the rule, unfair prejudice is "an undue tendency to suggest decision on an improper basis." *United States v. W.R. Grace*, 455 F. Supp. 2d 1181, 1194 (D. Mont. 2006) (quoting Fed. R. Evid. 403 advisory committee notes).  "Any decision to allow or exclude evidence under Rule 403 must be based on a detailed analysis of the specific facts of the case at hand – precedent is of little value." *In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1223, 1255 (E.D.N.Y. 1985).

"Trial courts properly are reluctant to exclude relevant evidence unless there is a powerful and compelling reason to do so." *Id.*

The carcinogen classifications derived by the IARC, NTP, and EPA reflect these organizations' determinations as to the cancer-causing potential of various substances, including those at issue in this action. In making such determinations, these organizations evaluate several different types of research methodologies. *See, e.g.*, Preamble, *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans,* at 9 (2006) ("Preamble") (stating that an IARC monograph is made up of exposure data, studies of cancer in humans, studies of cancer in experimental animals, and mechanistic and other relevant data). Based on the evidence collected, the IARC, NTP, and EPA then place an individual substance into any one of several different categories depending on its anticipated potential to cause cancer. *See* Preamble, at 22-23 (describing categories as "Carcinogenic to Humans," "Probably Carcinogenic to Humans," "Possibly Carcinogenic to Humans," "Not Classifiable as to its Carcinogenicity to Humans," and "Probably Not Carcinogenic to Humans"); U.S. Environmental Protection Agency, *Guidelines for Carcinogen Risk Assessment*, at 2-54 to 2-58 (2005) (describing categories as "Carcinogenic to Humans," "Likely to Be Carcinogenic to Humans," "Suggestive Evidence of Carcinogenic Potential," "Inadequate Information to Assess Carcinogenic Potential," and "Not Likely to Be Carcinogenic to Humans").

The VA/IOM classifications are promulgated pursuant to the Veterans' Dioxin

3

and Radiation Exposure Compensation Standards Act, Pub. L. No. 98-542, 98 Stat. 2725 (1984) ("Dioxin Act"), and the Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11 (1991) ("Agent Orange Act").  The purposes of the Dioxin Act and the Agent Orange Act are the collection of data to determine what medical ailments are associated with military service in Vietnam and the provision of compensation to veterans who suffer from such ailments.  To that end, the VA relies on findings issued periodically by the IOM based on "a comprehensive evaluation of scientific and medical information regarding the health effects of exposure to Agent Orange, other herbicides used in Vietnam, and the various components of these herbicides . . . ." Institute of Medicine, *Veterans and Agent Orange: Update 2004*, at 1 (2004).  After that evaluation is completed, the IOM classifies the chemical substances based on their potential to cause disease.  *Id.* at 7-9.

    i. Relevance

    Despite the defendants' assertions to the contrary, the carcinogen classifications and the VA/IOM classifications are probative evidence of causation.  Essentially, these classifications are distilled from a comprehensive review of scientific studies researching the link between human diseases and exposure to certain chemicals, some of which are involved in this case.  The studies analyzed cover a broad range of scientific disciplines, and the review itself is performed by qualified experts.  Thus, the classifications are the end product of a detailed investigation into whether exposure to the substances at issue in this case is connected with human illness.  Testimony regarding these classifications would

assist the jury in determining the general causation question in this case and also in evaluating the plaintiffs' claims for increased risk and fear of contracting cancer. Michael D. Green, D. Michal Freedman, & Leon Gordis, *Reference Manual on Sci. Evid.* 392 (2d ed. 2000) ("Reference Manual") ("General causation is concerned with whether an agent increases the incidence of disease in a group and not whether the agent caused any given individual's disease.").

The defendants do not appear to contest the scientific validity or reliability of the classifications in discounting their relevance. Rather, they argue that the carcinogen and VA/IOM classifications lack probative value because they are based on a "weight-of-the-evidence" standard and a "significant-statistical-association" standard, respectively, that are less demanding than the "preponderance-of-the-evidence" standard of proof used in civil tort litigation. Because the classifications do not demonstrate causation by a preponderance of the evidence, the defendants claim, they are not particularly probative of the causation question in this action. This argument confuses "sufficiency" of evidence with "admissibility" of evidence.

> The "admissibility" and "sufficiency" of scientific evidence necessitate different inquiries and involve different stakes. Admissibility entails a *threshold* inquiry over whether a certain piece of evidence ought to be admitted at trial. . . . A sufficiency inquiry, which asks whether the collective weight of a litigant's evidence is adequate to present a jury question, lies further down the litigational road.

*In re Joint Eastern & Southern Dist. Asbestos Litig.*, 52 F.3d 1124, 1132 (2d Cir. 1995) ("*Joint Eastern*") (emphasis in original). To be sure, the carcinogen and VA/IOM classifications are not in themselves sufficient evidence from which a jury

5

could conclude that exposure to the defendants' chemicals caused the bellwether plaintiffs' diseases. The plaintiffs do not even purport to argue that the classifications are sufficient evidence of specific causation. This does not mean, however, that evidence that exposure to one of the defendants' chemicals is, for example, "significantly statistically associated" with a disease is *irrelevant* in deciding whether that chemical caused that disease.

Moreover, scientific researchers generally "are conservative when it comes to assessing causal relationships, often calling for stronger evidence and more research before a conclusion of causation is drawn." Reference Manual at 375.

> Medical and behavioral statistics is a methodology that seeks to measure degrees of probability, not causality. Uncertainty is never completely abolished in any form of behavioral or medical science statistical manipulation. Therefore, conclusions must be defined in terms of "suggestions" or "associations" rather than causes. This is not due to some inaccuracy or vagueness of the technique or conclusion, but rather is intrinsic to the properties of statistics.

*Berry v. CSX Transp., Inc.*, 709 So. 2d 552, 568 n.12 (Fla. Dist. Ct. App. 1998). If courts accepted the defendants' reasoning that scientific research lacks probative value if it cannot demonstrate causation by a preponderance of the evidence, many otherwise valid studies would be subject to exclusion on relevance grounds. Such an approach to the admissibility of scientific studies would not reflect the realities of modern scientific research. Even if the defendants are correct in claiming that the carcinogen and VA/IOM classifications are based on a lower standard than that required in tort cases, testimony regarding these classifications is nonetheless relevant to a material issue in this case.

6

The court notes, however, that the defendants request that the court exclude not only the classifications themselves but also any references to or testimony regarding the classifications at trial. *See* DE 541, at 2 ("The relief defendants seek is not to penalize any expert for considering the classifications in developing their opinions, but an in limine order that merely bars any mention of the classifications before the jury."). Thus, while the defendants recognize that it is not improper for experts to rely on these classifications in forming their opinions, they ask the court to deprive such experts of the opportunity to inform the jury that they did so.

The jury, however, must evaluate the weight to be given to expert testimony, and it is therefore entitled to a full presentation of the bases of that testimony.[1] If an expert is not permitted to reveal the materials on which he or she relied in forming his or her opinion (or if a party is not permitted to demonstrate than an expert did not rely on a potentially relevant source), then the jury's ability to accurately perform this evaluation is undermined. Thus, the court's finding that the classifications are relevant is not altered by the allegedly limited nature of the relief sought by the defendants.

ii. Prejudice

Having found that testimony regarding the classifications is relevant, the court must now determine whether the probative value of such testimony is

---

[1] The court is aware that otherwise inadmissible information is not rendered admissible simply because an expert relies on it as the basis for his or her opinion. *See* Fed. R. Evid. 703 advisory committee notes. Thus, despite the apparent breadth of this statement, the court limits it solely to the facts of this case.

outweighed by its potential prejudicial impact. The defendants first claim that such evidence would be unduly prejudicial because the jury might be confused by the terminology used in the classifications and would place more emphasis on them than their probative value would warrant. However, the court has already noted the flaws in finding that a scientific study is irrelevant merely because it speaks in terms of "association" or "correlation" rather than "causation." Similarly, the inherent risk of juror confusion in the distinction between these terms does not warrant a conclusion that studies finding an "association" or "correlation" rather than a "cause" are inevitably misleading. Were this the case, precious little statistical evidence would ever be admitted. While there is some possibility of confusion as a result of the difference between correlation and cause, this possibility does not render the evidence unduly prejudicial and thus does not warrant the exclusion of the relevant evidence at issue here.[2] The court is confident that the attorneys can clarify any confusion.

The defendants also argue that undue delay will ensue if evidence of the classifications is admitted because of the time that will be required to explain its

---

[2] The court also rejects the defendants' argument that the classifications are misleading because they were promulgated to provide compensation for veterans and for preventative health purposes. While the defendants are correct that the public policies underlying tort compensation differ from those that led to the carcinogen and VA/IOM classifications, the ultimate goal of the agencies developing the classifications is to determine whether a given substance causes a given disease. As this is the same question the jury must answer in assessing causation, any "disconnect" between the purposes behind the classifications and the purpose of a trial by jury has little effect on the probative value of the classifications.

meaning and significance to the jury. The court disagrees. The classifications and the methodology for deriving them have been fully transcribed by the organizations that compiled them and generally speak for themselves. To the extent that the explanations provided by the organizations themselves are insufficient, the court is fully confident in the ability of counsel for both parties to clearly and succinctly explain the relevance of these classifications to the jury, and in the ability of the jury to understand them. Finally, the trial of this case is already scheduled to last over fifty days, and much of that time will be spent explaining the methodology and results of numerous other scientific tests. The court is therefore unpersuaded that any additional time needed to educate the jury about these particular classifications is prohibitive.

The defendants also contend that the prestige of the EPA, IARC, NTP, and IOM will cause the jury to defer to the classifications and ignore more probative evidence. There is a danger that government reports, even if not particularly probative, will nonetheless sway the jury by their aura of special reliability and trustworthiness. *Gehl by Reed v. Soo Line R.R. Co.*, 967 F.2d 1204, 1208 (8th Cir. 1992) (citation omitted). If the court were convinced that the classifications were invalid or of minimal probative value, it might be inclined to agree with the defendants. As previously noted, however, the classifications result from an in-depth analysis by experts in their fields as to whether chemicals, including those at issue in this case, can cause cancer and other diseases. The defendants have not argued that the reviews performed by the IOM, EPA, IARC, and NTP are unreliable

9

or poorly performed, and the court has already determined that the classifications are relevant. Thus, this is not a situation in which the "aura" associated with the government's research outweighs its probative value. Any prejudice resulting from the prestige or imprimatur of the IOM, EPA, IARC, and NTP is therefore not undue prejudice; the jury is entitled to know the source of the classifications in evaluating the weight to give to them.

Finally, the defendants claim that the prejudicial value of the carcinogen and VA/IOM classifications is magnified in this case because the plaintiffs' experts distort the importance of the classifications and invite the jury to place more weight on the classifications than is appropriate. If this is the defendants' concern, then they should seek the exclusion of the opinions of the plaintiffs' experts, not the underlying basis for those opinions, under Rule 403 or Rule 702.[3] The court will not exclude an entire category of relevant evidence simply because experts may seek to misuse it.

When these motions were orally argued on March 23, 2007, counsel for the defendants claimed that the VA/IOM classifications were unduly prejudicial in part because the jury would hear testimony that the VA compensates Vietnam veterans

---

[3]Many of the cases cited by the defendants deal with situations in which courts held that expert testimony was unreliable due to the expert's over-reliance on the classifications. *See, e.g.*, *Mitchell v. Gencorp Inc.,* 165 F.3d 778 (10th Cir. 1999); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194 (5th Cir. 1996); *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814 (W.D. Tex. 2005). The defendants, however, essentially ask this court to support the inverse proposition, that the *classifications* are unduly prejudicial because the *expert testimony* based on them might be unreliable. This the court refuses to do.

based on a finding that their illnesses are statistically significantly associated with exposure to chemicals in Vietnam.  Following the parties' arguments, the court orally denied the defendants' motions in limine but informed the parties that a written opinion would be forthcoming.  After further review, however, the court agrees with the defendants that testimony regarding the government's payments to its veterans is irrelevant to the issues in this action and would potentially confuse the jury into believing that they should likewise compensate the plaintiffs.  Therefore, while testimony regarding the VA/IOM classifications is admissible at trial to the extent that it deals with the link between disease and the defendants' chemicals, any testimony regarding the fact that the VA compensates veterans for chemical exposure they suffered during the Vietnam War is inadmissible.  That narrow exception aside, the court finds that testimony regarding the carcinogen and VA/IOM classifications is relevant and that its probative value is not substantially outweighed by its prejudicial effect.  Accordingly,

   **IT IS ORDERED** that the defendants' motion in limine (DE 517) is **DENIED**.

   **IT IS FURTHER ORDERED** that the defendants' motion in limine (DE 533) is **GRANTED IN PART** and **DENIED IN PART**.  The defendants' motion is **GRANTED** to the extent that any evidence or testimony regarding payments or other compensation received by Vietnam veterans based on the VA/IOM classifications is **INADMISSIBLE** at the trial of this action.  The remainder of the motion is **DENIED**.

Signed on April 4, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY