UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 03-476-JBC**

**CHARLES W. ADAMS, JR., et al.,**                              **PLAINTIFFS,**

**V.**                  **MEMORANDUM OPINION AND ORDER**

**COOPER INDUSTRIES, INC. and**
**MCGRAW EDISON COMPANY,**                           **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion to strike certain opinions of plaintiffs' expert James Tarr, P.E. (DE 569). The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendants' motion in part and deny it in part.

On December 12, 2006, the plaintiffs filed a motion to substitute expert witness. *See* DE 503. The plaintiffs claimed that they were forced to withdraw an air modeling expert, Drew Peake, because he had proved incapable of competently performing the work for which he had been retained (that is, the updating of the air dispersion modeling conducted by Dr. Hugh Spencer during the previous *Amburgey* litigation). The plaintiffs represented that the defendants would suffer no prejudice from this substitution because "the scope of the opinions from the proposed substituted expert report is no broader than the opinions originally expressed by Mr. Peake in his two reports." DE 503, at 3.

On December 21, 2006, the court granted the plaintiffs' motion to

substitute, with the caveat that this new expert do "nothing but air modeling." Tr. of Hr'g, at 39. While the court declined to impose any particular methodology on this substitute expert, it also stated "specifically that this substitute's report may mirror Mr. Peake's report but only in the area of air modeling." *Id.* at 39-40. These limitations were propounded by the court in response to the defendants' concerns regarding the potential scope of the proposed substituted expert's opinions:

> MR. ZATZ: . . . [I]t is important to note that Mr. Peake's original expert report contains 17 expert opinions. *And they're not all confined to air modeling*. Mr. Peake reports on the various chemicals that in his view were emitted into the air, the soil, the water, and the food chain; the ability of the defendants to prevent those emissions; the toxicity of trichloroethylene, metholine chloride and so forth; the actual exposures of the Plaintiffs; *the chemical contents of respirable particulate matter emanating from the site*. And then in October he has [a] supplemental expert report with seven more opinions. . . .
>
> I think an appropriate sanction here . . . is to make sure Mr. Substitute, if you grant the motion, *does nothing but air modeling*.
>
> One of the other things that concerned us in responding to this motion . . . was the very vague phrase that . . . the proposed scope of the substitute's opinion would mirror Mr. Peake's report. Those seem to me to be very carefully chosen words . . . .
>
> Now, Mr. Peake has expressed, what, 24 opinions. I think an appropriate sanction based on the rational [sic] for granting this motion is that this expert should model and only model . . . .

*Id.* at 24-26 (emphasis added). Thus, the agreement reached at the December 21, 2006, hearing was that the plaintiffs' substituted expert would be permitted to replace Mr. Peake solely to the extent of replicating the air modeling work that he was unable to complete. The substituted expert could not, however, opine on

every detail covered in Mr. Peake's expert reports, nor could his air modeling opinions exceed the scope of those proposed by Mr. Peake. The plaintiffs subsequently named James Tarr, P.E., as their substitute expert and the defendants received his expert report on January 31, 2007.

On March 12, 2007, the defendants filed the motion to strike that is currently at issue. They allege that Mr. Tarr seeks to offer opinions that exceed the scope of the court order that permitted his designation. Specifically, the defendants seek to prevent Mr. Tarr from testifying about the following subjects: (1) the legality, propriety and health effects of open burning; (2) combustion reactions and the possibility that dioxins and furans may have been released from both the burn box and the boilers at the NEC plant; (3) chemicals for which he did no air modeling and to which no causation expert has linked any of the bellwether plaintiffs' illnesses; and (4) two new modeling runs he did for the "burn box," including a modeling run involving particulate matter (which the defendants claim neither Dr. Spencer nor Mr. Peake modeled).

The plaintiffs assert that Mr. Tarr will not express any opinions regarding the legality, propriety and health effects of open burning, or any opinions on chemicals for which he did no air modeling and to which no causation expert has linked any of the bellwether plaintiffs' illnesses. Thus, with regard to points (1) and (3) listed above, the defendants' motion to strike is moot.

The plaintiffs admit that Mr. Tarr does plan to offer opinions regarding the

emission of dioxins, furans, and particulate matter. Nonetheless, they claim that these opinions do not exceed the scope of Mr. Peake's proposed testimony with respect to air modeling. In his initial expert report, Mr. Peake expressed no fewer than three opinions related to the emission of particulate matter and also stated that "[s]moke from low-level fires at the NEC-plant contained dioxins, hydrogen chloride, phosgene and other compounds . . . ." Exhibit 2 to DE 503, at 5-6. However, in Mr. Peake's latter report, in which he discussed AERMOD air dispersion modeling for the first time, he made no mention of dioxins, furans, or particulates. *See* Exhibit 3 to DE 503. Rather, he opined that Dr. Spencer's modeling results were reliable and that modeling results using AERMOD will likely show concentrations similar to or higher than those calculated by Dr. Spencer. *Id.* at 2-3. A chart provided by Mr. Peake indicates that he planned to model PCB and solvent emissions from the coal-fired burner, the oil-fired burner, and the low-level fire;[1] this chart does not indicate any modeling he planned to do of dioxins, furans, or particulates. *See* Exhibit 3 to DE 574.

The court agrees with the defendants that Mr. Tarr's opinions on dioxin, furan, and particulate emissions should be stricken. At oral argument, the plaintiffs argued that Mr. Tarr's opinions do not go beyond those of Mr. Peake because Mr. Peake's report indicates that he planned to discuss dioxins, furans, and particulates. An examination of Mr. Peake's May 15, 2006, report shows that the plaintiffs are

---

[1]Though Mr. Tarr refers to the "low-level fire" as the "burn box" in his expert report, the parties indicate that these two terms refer to the same burn site.

correct on this point. Nonetheless, the court very clearly limited Mr. Tarr to mirroring Mr. Peake's report "only in the area of air modeling." The court did not permit him to opine on every subject covered by Mr. Peake, nor did it permit him to conduct modeling runs other than those performed by Mr. Peake. The mere fact that Mr. Peake planned to discuss these chemicals did not give Mr. Tarr free rein to offer opinions or perform modeling runs on them himself.

The plaintiffs also assert that Mr. Tarr's opinions on dioxins, furans, and particulates reflect an appropriate updating of the work of Dr. Spencer. In doing so, the plaintiffs claim that the defendants ask the court to accept an "absurdly narrow definition of 'air modeling.'" DE 526, at 1. The plaintiffs ignore the fact that Mr. Tarr's substitution was intended to serve a narrow purpose. The plaintiffs argued that Mr. Peake's AERMOD results were flawed, and the court allowed Mr. Tarr to replace him so that his AERMOD testing could be re-performed. This substitution was intended to put the plaintiffs in as good a position as they would have held had Mr. Peake performed his job as expected; it was not intended to allow the plaintiffs to designate a superior air modeling expert after the deadline for expert disclosures. Thus, while the plaintiffs may be correct in claiming that Mr. Tarr's opinions merely update Dr. Spencer's work, they forget that the scope of Mr. Tarr's permissible testimony was much narrower than that. Mr. Tarr was designated simply to replicate Mr. Peake's proposed models, and he will be limited to that subject matter. Accordingly,

**IT IS ORDERED** that the defendants' motion to strike (DE 569) is **GRANTED**

**IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that Mr. Tarr's opinions regarding: (1) combustion reactions and the possibility that dioxins and furans may have been released from the burn box and the boilers at the NEC plant; and (2) the modeling runs he did for the "burn box" involving particulate matter are hereby **STRICKEN**. In all other respects, the motion is **DENIED AS MOOT**.

Signed on April 5, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY