ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| CHARLES W. ADAMS, JR., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>COOPER INDUSTRIES, INC. and )<br>MCGRAW EDISON CO., )<br>)<br>Defendants. )<br>) | C. A. NO. 5:03-CV-476-JBC |

**DEFENDANTS' REPLY
IN SUPPORT OF THEIR MOTION FOR LEAVE TO TENDER ADDITIONAL
AUTHORITY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY
AND OPINIONS OF PLAINTIFFS' EXPERTS
<u>REGARDING SPECIFIC CAUSATION</u>
(Relates to DE Nos. 552 and 788)**

If nothing else, Plaintiffs' opposition to the Court's consideration of the *Borg-Warner* decision lays bare their extreme position on what qualifies as sufficient evidence of specific causation. Plaintiffs truly contend that if they can prove exposure to **one molecule** of dioxin originating from the NEC Plant, then they have satisfied *Daubert* and the specific causation requirements of Kentucky law. According to Plaintiffs, dose—the cornerstone of toxicology and causation—simply doesn't matter.

Through great contortions, Plaintiffs argue that the *Borg-Warner* decision somehow supports the radical suggestion that specific causation can be shown without consideration of dose. But *Borg-Warner* explicitly holds that there must be "[d]efendant-specific evidence relating to the approximate *dose* to which the plaintiff was exposed, coupled with evidence that ***the dose was a substantial factor in causing***" the disease. *Borg-Warner v. Flores,* 2007 WL 1650574, at *7 (Tex. June 8, 2007) (emphasis added). This is the same requirement set forth by

the Sixth Circuit in *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001), and it is binding on Plaintiffs. Because this required quantitative evidence—the dose-response analysis—is missing from Plaintiffs' case, their experts' testimony on specific causation should be excluded.

## ANALYSIS

Plaintiffs consistently contend that they can demonstrate specific causation through evidence that they were exposed to ***one molecule*** of a harmful chemical (dioxin) from the NEC plant. Occasionally, recognizing the radical nature of their position, Plaintiffs retreat and shift their argument to contend that while one molecule may not be enough, a "low-level" or "non-trivial" exposure is sufficient to prove causation. But because Plaintiffs do not define or quantify what "non-trivial" dose is sufficient to cause injury, Plaintiffs end up where they started: arguing that if they can show ***any*** exposure to chemicals from the NEC plant, then they have met *Nelson*'s rigorous causation standard with *Daubert*-valid experts.

Defendants have moved for the Court to consider the recent Texas Supreme Court decision in *Borg-Warner*, which tracks the Sixth Circuit's reasoning in *Nelson*. In their response to Defendants' motion to submit additional authority, Plaintiffs try to twist the *Borg-Warner* case into supporting their "one molecule" theory. But it cannot be done. As does *Nelson*, *Borg-Warner* rejects Plaintiffs' theory that they can establish specific causation without a dose-response analysis.

### 1. One hit of one molecule: a theoretically increased risk is **not** tantamount to causation.

Plaintiffs first attempt to distinguish themselves from the *Borg-Warner* decision. Plaintiffs concede that while the Texas Supreme Court required the plaintiff to establish a dose-

2

response relationship between asbestos exposure and asbestosis—the disease at issue in *Borg-Warner*—the Texas Supreme Court would not have so required if the disease at issue had been cancer, because cancers can be caused by one molecule of exposure. But nowhere in the opinion does the *Borg-Warner* court assert that cancer claims are not subject to dose-response requirements, nor does the opinion even discuss Plaintiffs' one-molecule theory.

Plaintiffs next argue that the Reference Manual on Scientific Evidence (the "Reference Manual') supports their "no safe dose" or "one molecule" theory. In particular, Plaintiffs rely on the Reference Manual's discussion of cancer mutagens to bolster their "one molecule" position. It is true that, theoretically, one molecule of certain chemicals (mutagens) could alter the genetic material of a cell and increase the *risk* of cancer. Federal Judicial Center, *Reference Manual on Scientific Evidence* ("REF. MAN. SCI. EVID.") at 426 (2d ed. 2000) (West). For example, one could smoke a single cigarette as a 13-year old and then develop lung cancer at age 55. As a matter of theory, that one cigarette may have increased the *risk* that lung cancer would develop.

But that one cigarette cannot be said to have *caused* the lung cancer. "From a practical perspective one's level of increased risk from smoking one cigarette over a lifetime, or even one cigarette a month for a lifetime, is not likely to be distinguishable from 'background' risk for cancer from all other causes." David L. Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Pol'y 5, 16-17 (2003-2004) (emphasis added) (attached as Ex. 1 to DE #664).

The "no safe level" or "one molecule" theory only addresses risk; it does not show causation. Indeed, in the very paragraph that Plaintiffs cite to in the Reference Manual in support of their one-molecule theory (first full paragraph on page 426), it is explained that while an exposure to a single mutagen might increase the *risk* of cancer, the risk is likely to be very

3

slight "***and not achieve medical probability***."  REF. MAN. SCI. EVID. at 426.  And, of course, showing medical probability of causation is ***exactly*** what Plaintiffs must do in this case.

As does the Reference Manual, so too have courts broadly rejected the contentions that evidence of "increased risk" or "no safe dose" are sufficient to prove specific causation:

> Increased risk alone is not actionable.  In toxic tort cases generally, plaintiffs must establish, to a *reasonable medical probability, their illnesses* were caused by the toxic exposure.  The fact the chemicals increased the possibility of sickness in the overall population does not suffice to provide a causal link with plaintiffs' illnesses.

*Whiteley v. Philip Morris, Inc.*, 117 Cal App. 4th 635, 701 (2004) (emphasis in original); *see also Turpin v. Merrell Dow Pharm., Inc.* 959 F.2d 1349, 1350 (6th Cir. 1992) (causation under no safe dose theory is not known and cannot be proved to the requisite degree of medical probability); *Brock v. Merrell Dow Pharm., Inc.,* 874 F.2d 307, 315 (5th Cir. 1989) (allowing this theory would "result in an infinite error rate").

The "one molecule" theory does not excuse the Plaintiffs from performing the dose-response analysis *Nelson* requires.  Even where a chemical acts as a mutagen, dose is still necessary to determine causation.  "[A]s with all toxicological responses, the ***dose-response*** for mutagens ***is critically important to consider***. . . .  [T]he critical issue is whether there ***is a biologically relevant*** increase in the background rate of DNA damage from all other sources over the lifetime of an individual."  Eaton, *supra*, at 30 (some emphasis added and punctuation omitted).  True, for policy reasons, some regulatory agencies adopt the "no safe dose" theory as most protective of public health.  However, this policy decision should not be confused with causation in an individual case.  The decision to assume a no-threshold risk for public health guidelines is "of marginal relevance to estimating 'causation' in an individual—e.g., whether a particular chemical caused or contributed to a particular disease or illness in a given person."

Eaton, *supra*, at 34; *see also id.* at 36 and 38; Borak Declaration, ¶ 19 (attached as Ex. 2 to DE #654) (explaining that even where a federal agency classifies a chemical as a "non-threshold" carcinogen, it nonetheless recognizes that there is no increased risk if the levels of exposure are not very high; therefore, one needs to know the exposure levels in order to determine the risk).

These points are well illustrated in *Sutera v. Perrier Group of America, Inc.*, 986 F. Supp. 655 (D. Mass. 1997). The plaintiff, a heavy drinker of Perrier bottled water, brought suit after it was determined that Perrier contained trace amounts of benzene. The plaintiff argued that this exposure had caused him to develop leukemia. The plaintiffs' expert relied on the one-molecule theory to establish causation, opining that "because benzene is a known mutagenic carcinogen, any level of exposure to benzene, including the trace amounts found in Perrier water . . . probably did cause [plaintiff's] leukemia." *Id.* at 656. The court recognized that benzene was a known human carcinogen and an established cause of leukemia. *Id.* at 659. But the court rejected the notion that the non-threshold (i.e., one molecule is enough) model of causation could be used to show causation. While the court found that the one-molecule theory could reasonably be relied on to reduce public exposure to harmful substances, it held "there is no scientific evidence that the linear no-safe threshold analysis is an acceptable scientific technique used by experts *in determining causation in an individual instance*." *Id.* at 664 and 666 (emphasis added).

The "one molecule" theory simply proves too much when one attempts to use it to show individual causation; it is tantamount to *causeless liability*. If exposure to a single molecule is sufficient to establish legal cause against a defendant, then almost everyone is responsible, and everyone is liable: the producers of our food, nearly every business in every industry, every operator of a motor vehicle, the neighbor who burns leaves or trash or who heats her home with

coal, the cigarette smoker on a crowded street. This is not to say that cancer risk estimates are meaningless just because almost everything is risky. But if, as Plaintiffs advocate, the most infinitesimal increase in risk equals causation, then legal cause means nothing. Borak Declaration, *supra,* at ¶ 15. Fortunately, the law does not permit such a draconian result; the Sixth Circuit (*Nelson*), the *Borg-Warner* holding, and various other cases from across the country make liability in toxic tort cases dependent on actual cause proven by evidence of dose.

The foregoing point is just as true for dioxins as it is for other potential toxins. As Plaintiffs' counsel conceded at the specific causation hearing, "it is absolutely true that all of us everyday have background level exposure to many toxins, including carcinogens. And if we were to assume that all of those caused every cancer, then it would render any causation analysis meaningless." Exhibit A, Remarks of Plaintiffs' counsel, Steve Jensen, April 18, 2007 Hearing, at 152. There were and are almost countless sources of dioxins in the Harlan area, other than the NEC plant, including motor vehicles, milk, residential oil consumption, municipal waste incineration, coal burning and trash burning. *See*, *e.g.*, Exhibit B, EPA Database of Sources of Environmental Releases of Dioxin-Like Compounds in the United States (http://cfpub.epa.gov/ncea/cfm/recordisplay.cfm?deid=20797). No one disputes that there was residential trash burning, cars operating, coal burning and milk consumption in Harlan that had nothing to do with the NEC plant. If Plaintiffs' "one molecule" theory were enough to show causation, how can Plaintiffs possibly demonstrate that the molecule that they inhaled came from the NEC Plant and not some other source or just the background dioxin to which all of us are exposed? They cannot. And this is why, as set forth in *Borg-Warner* (and in *Nelson*) Plaintiffs must show that they were exposed to a dose ***from the NEC Plant*** that was sufficient to cause their disease.

6

### 2. Plaintiffs' experts ultimately concede that there is a threshold, below which dioxin or other chemical exposure is unlikely to cause disease.

Despite their heavy focus on the one-molecule theory, Plaintiffs' experts ultimately must concede that, as with any chemical, there is a threshold level, below which dioxins are unlikely to have an adverse health effect. This is why they shift from arguing that any exposure to dioxin is unsafe and causative, to arguing that that any "non-trivial level of exposure" is causative. Orris Affidavit, at 4 (attached as Ex. 1 to DE #600). But the problem with Plaintiffs' argument is that they never state what the "non-trivial" level is. This is obviously a quantitative term, but Plaintiffs' experts leave it undefined. They seem to think that as long as they parrot the correct phrases—"low level," "non-trivial," etc.—they have met their burden. But *Borg-Warner* and *Nelson* require more. They require Plaintiffs to prove that their particular disease can be caused by a certain level of exposure ***and*** that Plaintiffs were in fact exposed at those levels.

### 3. The *Rutherford* decision does not alter the analysis.

Plaintiffs rely heavily of the California Supreme Court's decision in *Rutherford v. Owens-Illinois*, 941 P.2d 1203 (Cal. 1997), to bolster their fuzzy allegations about non-trivial dose and causation. But dose-response was not an issue in *Rutherford.* In that case, there was no dispute that the plaintiff had been exposed to a sufficient amount of asbestos to cause his lung cancer. Rather, the issue in *Rutherford* was whether the defendant, one of many defendants, had supplied the offending material. The *Rutherford* court made it plain that before deciding that the defendant was responsible for the asbestos exposure at issue, the plaintiff must always first establish that the plaintiff was exposed to a ***sufficient dose*** of asbestos to cause injury. *Id.* at 1223 & n.12. Here, the Plaintiffs have not satisfied this initial inquiry. They have not conducted

7

a dose-response analysis to allow them to say they were exposed to enough dioxin from any source, let alone the NEC plant, sufficient to cause them injury.[1]

## CONCLUSION

When faced with questioning at the April 18, 2007 specific causation hearing about how Plaintiffs could show that they were exposed to a sufficient dose to cause harm, as *Borg-Warner* and *Nelson* require, the refrain from Plaintiffs was that Dr. Sawyer's blood work proved that they were exposed to harmful levels of dioxins:

> [T]he blood data in this case provides exactly the information that Defendants are asking for . . . it provides all of the information for all of the Plaintiffs. Because it is quantified objective measured data about how much dioxin and dioxin-like compounds at least the Plaintiffs have in their blood.

Exhibit A, at 134. The Court has since ruled that Dr. Sawyer's work is unreliable and inadmissible. Thus, Plaintiffs are left to argue that they were surely exposed to *something* from the NEC plant by virtue of living, visiting, or working in some proximity to the plant. But this is not enough. It is not adequate to simply argue that "some" exposure occurred. There must be scientifically reliable evidence that there was exposure of a sufficient magnitude to cause disease. This requires dose analysis, and Plaintiffs' experts have failed to complete this necessary work.

Accordingly, the Court should follow the guidance set forth in *Borg-Warner*, and the rule set forth in *Nelson,* and grant Defendants' *Daubert* motion on specific causation.

---

[1] *Rutherford* also addresses legal causation and crafts a legal causation rule for California "asbestos-related cancer cases." In California, once it is established that asbestos has caused plaintiffs' disease, the plaintiff is not required to show that each defendant was the actual cause of the disease under Restatement 402's "but for" causation test. Rather, in asbestos cases, California uses a hybrid "but for" test that allows a plaintiff to satisfy legal cause by showing that a particular defendant made a substantial contribution to the aggregate dose which caused the disease. 941 P.2d at 1203. This, however, is not the rule in Kentucky. As set forth in the briefing on legal cause, in Kentucky the plaintiff bears the burden of establishing that each alleged cause, **viewed in isolation**, is capable of being a cause-in-fact of his injury. Applied here, this means that Plaintiffs must show that, when considered separately, exposures from the NEC plant must be the "but for" causes of their injuries, even though there might be other causes as well. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91-92 (Ky. 2003). *See* briefing at DE #655.

Respectfully submitted,

Harry K. Herren
Angela Logan Edwards
Woodward, Hobson & Fulton, L.L.P.
2500 National City Tower
Louisville, Kentucky  40202
Tel:  (502) 581-8000
Fax:  (502) 581-8111
hherren@whf-law.com
aedwards@whf-law.com

and

Clifford J. Zatz
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel:  (202) 624-2810
Fax:  (202) 628-5116
czatz@crowell.com

s/Tracie J. Renfroe
Robert E. Meadows
Tracie J. Renfroe
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas  77002-5213
Tel:  (713) 751-3214
Fax:  (713) 751-3290
rmeadows@kslaw.com
trenfroe@kslaw.com

and

Linnea Brown
Holme Roberts & Owen LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
Tel:  (303) 866-0608
Fax:  (303) 866-0200
nea.brown@hro.com

*Counsel for Defendants, Cooper Industries, Inc. and McGraw Edison Company*

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing was served via electronic filing on this 23rd day of July, 2007 to the following:

| | |
|---|---|
| Donna Keene Holt<br>P.O. Box 10307<br>Knoxville, TN 37939<br><br>Charles L. Cunningham, Jr.<br>Suite G<br>6010 Brownsboro Park Boulevard<br>Louisville, KY 40207 | Nancy Seidler Eichler<br>Masry & Vititoe<br>Second Floor<br>5707 Corsa Avenue<br>Westlake Village, CA  91362<br><br>Ellen Presby<br>Laura Baughman<br>Jory Lange<br>Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Suite 1100<br>Dallas, TX  75219 |

           s/Tracie J. Renfroe
              Tracie J. Renfroe