UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 03-476-JBC

CHARLES W. ADAMS, JR., et al.,                                              PLAINTIFFS,

V.                         MEMORANDUM OPINION AND ORDER

COOPER INDUSTRIES, INC. and
MCGRAW EDISON COMPANY,                                                      DEFENDANTS.

* * * * * * * * * *

This matter is before the court on the defendants' motion for summary judgment (DE 965), the plaintiffs' motion for reconsideration of prior orders (DE 984), and the defendants' objections and motion to strike plaintiffs' evidence (DE 1002).

I.  Factual Background

This matter is one of several cases arising out of contamination caused by chemical emissions from the National Electric Coil ("NEC") plant in Harlan County, Kentucky.

> In February 1989, Kentucky officials discovered that the groundwater wells adjacent to the NEC plant were contaminated.  According to the defendants, after discovery of the contamination, Cooper Industries paid for and installed city water lines near the plant so that residents would no longer need to rely on the contaminated wells for their water. Between 1990 and 1992, over 500 plaintiffs filed actions in this court seeking damages relating to the contamination.  Several actions were consolidated into what has been referred to as the "*Robinett* litigation," which went to trial in April of 1996.  The *Robinett* litigation was settled in October of 1996, with payments being made to the plaintiffs in November of that same year.  The Environmental Protection Agency established for the NEC plant a clean-up plan which has been in place

since 1992.

*Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 799 (E.D. Ky. 2000). A class action was filed in the Harlan Circuit Court on October 6, 1997. *Lankford, et al. v. Cooper Indus., et al.*, No. 97-CI-00670 (Harlan Cir. Ct. 1997). The class was later decertified, and many of the plaintiffs in that case settled their claims. Pursuant to the settlement agreement reached in that case, the statute of limitations for actions by plaintiffs who fit the class description was tolled from the date the *Lankford* action was filed through April 1, 2004. This lawsuit was filed on September 19, 2003, and the complaint alleges various claims for wrongful death and personal injury. A related lawsuit, *Moody, et al. v. Cooper Indus., et at.*, No. 03-158-JBC, was filed on February 13, 2003, and was later consolidated with the present case. This matter has proceeded toward trial using a representative bellwether process. Only four plaintiffs are currently designated as bellwethers, and the defendants now move for summary judgment on those four plaintiffs' claims. The court will address the motions to strike and for reconsideration before discussing the summary judgment motion.

**II. Motion to Strike**

The defendants object to three new declarations attached to the plaintiffs' pleadings from the plaintiffs' experts, Drs. Kramer, Orris, and Rodgers. Each of these experts has previously prepared Rule 26 expert reports, given deposition testimony, and authored affidavits during the *Daubert* briefing. Although the new

declarations purport to illustrate and clarify the allegedly erroneous factual analyses made by the court based on evidence that was previously produced, portions of the declarations actually present new evidence regarding the prior data. For instance, Dr. Rodgers uses a new calculation in evaluating the blood data of the four bellwethers[1] and Dr. Kramer offers a new opinion about elevated blood levels. The plaintiffs had "adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to their testimony" before the court ruled on the defendants' *Daubert* motion on specific causation. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 249 (6th Cir. 2001). Fairness does not require that the plaintiffs be afforded a second chance to shore up their case before the court may consider the defendants' motion for summary judgment. *Id.* at 250. Further, the plaintiffs have conceded that without a reconsideration of the court's prior rulings, summary judgment must be granted in this case. Thus, the

---

[1] Dr. Rodgers presents a new way of interpreting existing blood data previously analyzed by Dr. Sawyer. Dr. Rodgers tries to refute this court's "half above, half below" assessment by using binomial calculations to illustrate the chance that so many results would be above half. However, Dr. Rodgers looks at only 24 of the 116 blood levels evaluated by Dr. Sawyer (DE 969 Exhibit 11), thereby ignoring the fact that Dr. Sawyer's chart highlights the results which are above the noted population average, and of those 116 blood levels, roughly half are labeled as above average, as the court previously noted (DE 786). Thus, Dr. Rodgers's analysis in no way illustrates how this court made clear error in its previous holding where it found Dr. Sawyer's methodology to be unreliable and misleading, including that his "focus on the elevated results to the exclusion of the normal or below-average results creates a false impression that the plaintiffs' congener samples were more elevated than they actually were." DE 786. Additionally, Dr. Rodgers did not see these blood samples until after he had formed his opinion.

3

declarations presented relate to the motion to reconsider, but on such a motion the court should be reconsidering only the evidence previously before it to determine whether the court clearly erred in making that decision. Therefore, the defendants' motion to strike the declarations of Drs. Kramer, Orris, and Rodgers is granted.

### III. Motion to Reconsider

The plaintiffs request that this court reconsider three prior orders: (1) the order excluding the specific causation opinions and testimony of Drs. Orris, Miller and Rodgers (DE 959); (2) the order excluding Dr. Sawyer's testimony and opinions (DE 786); and (3) the order finding Dr. Kramer's studies inadmissible pursuant to Fed. R. Evid. 403 (DE 510). Although the Federal Rules do not recognize a "Motion to Reconsider," the court interprets a motion for reconsideration as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *Tritent Int'l Corp. v. Kentucky,* 395 F. Supp. 2d 521, 523 (E.D. Ky. 2005). If there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice, a court may grant a motion to amend or alter the judgment. *GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999). In motions to reconsider, a plaintiff may not simply "reargue its prior position in the hope that the court will change its mind." *Al-Sadoon v. FISA Madison Financial Corp.,* 188 F. Supp.2d 899, 902 (M.D. Tenn. 2002).

To the extent the plaintiffs seek to revise the order pertaining to Dr. Sawyer, they are not asking this court to reconsider its rejection of either Dr. Sawyer's

4

methodology or his testimony.[2] As the court's prior holding related only to the admissibility of Dr. Sawyer's opinions and testimony, the court will deny that portion of the plaintiffs' motion to reconsider.

Next, the plaintiffs contend it is manifestly unjust to exclude the results of Dr. Shira Kramer's epidemiological studies. The plaintiffs seek to admit Dr. Kramer's results as support for their specific causation experts in demonstrating substantial exposure. But the plaintiffs concede the studies, standing alone, do not prove causation on a specific individual. DE 1005 at 14. Thus, the same issue remains that existed at the time of the prior ruling, that while Dr. Kramer's research may have limited relevance, the risk of undue prejudice to the defendants greatly exceeds the probative value of that evidence. Additionally, at this stage in the proceedings, the plaintiffs do not get the chance to argue a new legal theory as to the admissibility and helpfulness of Dr. Kramer's studies. Instead, in order to prevail on their claim that manifest injustice will result, the plaintiffs must show an error that is direct, obvious, and observable. *Black's Law Dictionary* (8th ed. 2004). Having failed to show clear error or manifest injustice, the plaintiffs cannot prevail on their motion for reconsideration of this court's ruling with respect to the admission of Dr. Kramer's studies.

Finally, the plaintiffs disagree with this court's order issued on July 30,

---

[2] The plaintiffs request this court to revise its order to address whether certain blood levels are abnormal. The court previously found that Dr. Sawyer's definition of "abnormal" was unreliable and misleading. DE 786. The court did not define what levels were abnormal in its prior order, nor will it do so at this time.

5

2007, excluding the testimony and opinions of the plaintiffs' specific causation experts, Drs. Orris, Miller, and Rodgers.  The plaintiffs point to the allegedly elevated blood levels as sufficient evidence of exposure to demonstrate specific causation.  But the plaintiffs ignore two key issues with respect to the blood data.  First, without Dr. Sawyer's testimony, the plaintiffs have not identified who will testify about the specific blood levels of the four bellwethers.  Second, the plaintiffs' specific causation experts reviewed the blood data only after reaching their initial causation opinions.  As the court previously held, an expert must demonstrate that there was a substantial exposure to the substance that allegedly caused the plaintiffs' injuries; the plaintiffs' specific causation experts failed to inquire into the amounts of chemicals to which the plaintiffs were exposed prior to reaching their initial specific causation opinions, therefore rendering their opinions unreliable.  DE 959.  The plaintiffs have failed to demonstrate clear error in the court's prior ruling excluding the opinions and testimony of Drs. Orris, Miller, and Rodgers.  *See Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 385 (6th Cir. 2004) (approving district court's denial of motion for reconsideration that merely raised arguments that were already ruled upon and in which party failed to show palpable defect by which the court was misled)*.*  Thus, the court will deny the plaintiffs' motion for reconsideration.

**IV.  Summary Judgment**

Summary judgment is appropriate only when there are no genuine issues of

material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The plaintiffs claim the defendants negligently released chemicals that then harmed the plaintiffs. Under Kentucky law, a negligence claim requires that the plaintiffs prove the defendants owed a duty to the plaintiffs, the defendants breached that duty, and the breach caused injury to the plaintiffs. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citing *Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245, 247 (Ky. 1992)). Thus, one of the elements the plaintiffs must prove is that the defendants' breach was a substantial factor in bringing about the plaintiffs' injuries. *Id.* (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143-44 (Ky. 1980); *Restatement (Second) of Torts* § 431, cmt. a).

In a toxic tort case, plaintiffs generally use experts to demonstrate general

and specific causation. *See Downs v. Perstorp Components*, 126 F. Supp. 2d 1090, 1095 (E.D. Tenn. 1999). Specific causation experts offer opinions on whether a particular plaintiff's exposure to a toxin was sufficient to cause his disease. Federal Judicial Center, *Reference Manual on Scientific Evidence* 396, 419 (2d ed. 2000). The court excluded the plaintiffs' specific causation experts as unreliable, citing their failure to demonstrate substantial exposure. *See* DE 959. Without the experts' opinions and testimony, the plaintiffs lack sufficient evidence of specific causation for a jury to reasonably find in their favor. *See* DE 984 at 2 (The plaintiffs concede that "[a]bsent a reassessment and a revision of prior rulings by the Court, Defendants would be entitled to summary judgment on the four bellwether claims."). Therefore, the plaintiffs have not presented evidence to support an essential element of their negligence claim and the court will grant judgment for the defendants.

The plaintiffs assert other claims against the defendants—including negligent failure to warn, increased risk of cancer for which they need medical monitoring, and punitive damages—each of which requires that the plaintiffs show causation. *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) ("Negligent conduct that causes no harm is not actionable."). The plaintiffs having failed to present any evidence to defeat summary judgment on these additional claims, the defendants are entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("The nonmoving party must

come forward with 'specific facts showing that there is a *genuine issue for trial*.'" (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*)).

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (DE 965) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for reconsideration of prior orders (DE 984) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' objections and motion to strike plaintiffs' evidence attached to plaintiffs' opposition to defendants' motion for summary judgment and plaintiffs' motion for reconsideration of prior orders (DE 1002) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs Mary Ann Jessie, Janice Abston, Doris Colinger, and Curtis Roper are **DISMISSED WITH PREJUDICE.**

Signed on  February 5, 2008

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY