UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**LEAD CIVIL ACTION NO. 03-476-JBC**

**CHARLES W. ADAMS, JR., et al.,** PLAINTIFFS,

**V.** <u>MEMORANDUM OPINION AND ORDER</u>

**COOPER INDUSTRIES, INC. and**
**MCGRAW EDISON COMPANY,** DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment against Aneti Saunders (R. 1246).  Because Saunders has not established specific causation sufficient to support her case against the defendants, the court will grant the motion.

This action is one of many cases that arose out of contamination caused by chemical emissions from the National Electric Coil (NEC) plaint in Harlan County, Kentucky.  Saunders, the sole remaining plaintiff, brought this suit on behalf of her husband, Thomas Saunders, who died of pancreatic cancer in 2002.  Saunders asserts that her husband's cancer was caused by exposure to chemicals from the NEC plant, where he worked as a laborer from 1970-71, and which is located in an area where he lived and visited often over many years.

In its case management order of June 17, 2009, the court ordered Saunders to make her expert disclosures pursuant to Rule 26 no later than October 30, 2009; such disclosures were required to be sufficient to establish causation as a

prerequisite to her proceeding with the case. *See* R. 1171. To facilitate the testing of stored tissue samples from Mr. Saunders, the deadline for Saunders's Rule 26 disclosures was extended until November 18, 2011. *See* R. 1242.

Saunders produced opinions from an epidemiologist, Wayne Sanderson, and a pathologist, Sydney Finkelstein, in support of her causation claim. Sanderson conducted a literature review of studies and other materials that address whether there is a link between environmental and occupational exposures to chemicals and pancreatic cancer. Finkelstein examined the tissue samples and issued an opinion that Mr. Saunders's cancer was genotoxic in origin as opposed to being sporadic in origin.

The evidence offered by Saunders's experts must be evaluated in the context of the court's prior orders in this case regarding proof of causation. In its order of July 30, 2007, which addressed other plaintiffs and their proffered expert testimony, the court excluded the opinions and testimony of those experts as unreliable because they did not "attempt[] to quantify or measure the amount or dosage of a substance to which a plaintiff was exposed and did not rely on any other expert who did so." R. 959 at 18. In the instant motion, the defendants have not moved to exclude Saunders's experts; rather, they have moved for summary judgment on the ground that even if all of Saunders's experts' testimony were admissible, that testimony is insufficient to prove specific causation and thus Saunders has failed to establish an essential element of her case. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986).

In order to establish a prima facie case of negligence in Kentucky, Saunders must be able to show that the defendants owed a duty to her husband, that the defendants breached that duty, and that the breach caused her husband's injury. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). In a toxic tort case such as this, Saunders must prove both general and specific causation: that a particular toxic substance is capable of causing her husband's injury, and that the toxic substance did, in fact, cause the injury. *See Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676-77 (6th Cir. 2011). Both elements of causation require scientific assessments that must be established through expert testimony. *Id*. at 677. An expert whose testimony is to be used to prove specific causation must establish that "the individual [was] exposed to a sufficient amount of the substance in question to elicit the health effect in question," and that "the chronological relationship between exposure and effect [is] biologically plausible;" as well as that the expert considered the likelihood that the chemical caused the disease or injury in the context of other known causes. R. 959 at 5 (citing David L. Eaton, *Scientific Judgment and Toxic Torts – A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Pol'y 5, 38-40 (2003); *Downs v. Perstorp Components, Inc.*, 126 F.Supp.2d 1090, 1095 (E.D. Tenn. 1999)). Saunders's other claims, which include assertions of negligent failure to warn and claims for punitive damages, also require her to demonstrate causation. *See Capital Holdings Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994). Thus, without expert testimony that indicates both

general and specific causation, all of Saunders's claims must fail. *See Pluck*, 640 F.3d at 677.

Putting aside issues of whether Saunders's experts' testimony is admissible under Federal Rule of Evidence 702, or whether those experts' testimony is sufficient to prove general causation, Saunders's claims fail because her experts cannot demonstrate specific causation.

Sanderson's testimony is insufficient to establish specific causation because he opines only on general environmental factors. In his report he writes, based on his review of scientific and medical literature, that "employees of [the NEC] plant and residents who may have been environmentally exposed to air and water effluents from the plant would have increased risk for cancer, including pancreatic cancer." R. 1247-2. However, evidence that exposure to a substance creates an "increased risk" to a population is, by itself, insufficient to prove specific causation with regard to an individual without evidence of the amount of exposure that individual had to the substance. *See Pluck*, 640 F.3d at 676-677. Sanderson does not address whether Mr. Saunders was actually exposed to any chemicals from the NEC plant, nor does he attempt to extrapolate from the data he reviewed what would constitute a sufficient amount, frequency, or duration of exposure to cause Mr. Saunders's injury. The generalized statements in Sanderson's opinion are thus insufficient to prove specific causation.

Finklestein's opinion is also insufficient to prove specific causation. He performed no analysis that would determine what, if anything, Mr. Saunders may

4

have been exposed to at the NEC plant, for how long, or whether such exposure would have been sufficient to cause the mutational damage that Finklestein observed in the tissue samples. Finklestein's tests indicate "a high rate of passenger mutational damage [which is] in turn supportive of genotoxin exposure associated cancer formation rather than sporadic cancer formation." R. 1247-5. Finklestein does not claim, however, that those tests could indicate the specific genotoxin that would have caused the damage. While Finklestein notes that his experience shows that chlorinated solvents such as those found at the NEC plant may be connected to such mutational damage, he does not attempt to specify what genotoxins would have caused the damage to Mr. Saunders's cells, nor does he attempt to rule out other genotoxins that Mr. Saunders may have come into contact with during his life. Finklestein's testing, therefore, does not show that the defendants' products harmed Mr. Saunders, and it is therefore also insufficient to prove specific causation. *See Pluck*, 640 F.3d at 679. Furthermore, neither expert witness reported relying on other expert reports that would allow the court to find that Saunders was able to prove specific causation by aggregating the testimony of her experts.

Saunders argues that she should not be required to show specific causation in the manner the court required of the earlier plaintiffs, via a dose-response analysis. She argues that such a requirement is neither fair nor scientifically sound: because Mr. Saunders died in 2002, Saunders is unable to obtain specific dose information from him; and because "[s]cience also admits of more than one way to

5

conduct a 'proper' causation analysis." R. 1251 at 12. However, though Mr. Saunders's death from pancreatic cancer in 2002 is tragic, the difficulties in gathering evidence that arise because he is not able to provide testimony do not excuse Saunders from meeting her burden of proof. Furthermore, her second argument attempts to substitute scientific possibilities for legal standards. The issue of causation is not merely a question of science, but a question of law. The evidence presented by Saunders's experts may demonstrate that the defendants were responsible for releasing chlorinated solvents into the surrounding ecosystem; it may reveal a correlation or causal relationship between such chemicals and pancreatic cancer; and it may show that Mr. Saunders's cancer was caused by a genotoxin, of which the chlorinated solvents at issue are a type. This evidence, however, does not prove that the defendants are legally culpable in Mr. Saunders's death, because it does not establish that Mr. Saunders was exposed to a sufficient quantity of the chemical to cause his injury, and because it fails to rule out other possible causes for his cancer. *See* R. 959 at 5. Saunders argues that a dose-response analysis is not the only way to prove specific causation, but she fails to propose another method of proving specific causation that would effectively demonstrate the defendants' culpability based on the evidence she has procured. Thus, because the evidence presented by Saunders's experts is insufficient to prove, either scientifically or legally, that the defendants actually caused Mr. Saunders's cancer, Saunders has failed to establish the specific causation element of her prima facie case. Therefore, the court will grant summary judgment in favor

6

of the defendants pursuant to its order of June 17, 2009, and Fed. R. Civ. P. 56(a).

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (R. 1246) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motions to seal (R. 1245, 1253) are **GRANTED**.

A separate judgment will issue.

Signed on June 18, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY